UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

PHILIP WAYNE BERRYMAN et al.,

        Plaintiffs,

v.

HEIDI WASHINGTON et al.,

        Defendants.
_____/

Case No. 1:18-cv-1317

Honorable Gordon J. Quist

## OPINION

This is a civil rights action brought by state prisoners under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiffs' *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiffs' allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiffs' complaint for failure to state a claim.

## Discussion

    I.    Factual Allegations

Plaintiffs are currently incarcerated with the Michigan Department of Corrections (MDOC) at the Macomb Correctional Facility (MRF) in New Haven, Macomb County, Michigan and the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The

events about which Plaintiffs complain, however, occurred at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan. Plaintiffs sue MDOC Director Heidi Washington, Deputy Director Kenneth McKee, Acting Deputy Warden Unknown Davis, Resident Unit Manager Unknown Lang, Prison Counselor C. Patricio, and Warden Unknown Jackson.

Plaintiffs in this action are six prisoners: Philip Wayne Berryman #107202, Steven Carver #107513, Walter Cummings #417330, Larry Crowe #120734, Donald Hayden #285134, and Gordon Stockenauer #116242. Each Plaintiff claims that he is wheelchair bound and requires a single person room because of his disability and has been provided single person rooms in other facilities. Plaintiffs allege that when they were transferred to LRF, the named Defendants denied them single person rooms in violation of their Eighth Amendment rights.

The Court has dismissed Plaintiffs Hayden and Stockenauer without prejudice for failure to pay the filing fee in compliance with the Court's orders (ECF Nos. 28 and 31). Plaintiff Berryman alleges that he was transferred to LRF on September 27, 2018. On September 30, 2018, all of the Plaintiffs sent letters to Defendants Washington and McKee seeking help in making LRF staff comply with the MDOC's single person cell policy. As of the filing of the complaint, Plaintiffs have not received a response.

Defendant Davis called Plaintiff Berryman into his office and asked him why he believed he was entitled to a single person room. Plaintiff Berryman showed him the Medical Service Advisory Committee Policy 0003 for Single Person Room, which states that patients who are wheelchair-bound will be automatically placed in a barrier-free wheelchair accessible cell. Plaintiff Berryman also showed Defendant Davis a copy of two special accommodation orders stating "Housing: Barrier free/wheelchair accessible and Medical equipment/Supplies:

2

Wheelchair-permanent" from LRF and JCF. Plaintiff Berryman also showed Defendant Davis copies of his medical records, which included a signed note by Peter Scuccimarri, M.D., stating, "With respect to your request for a single person cell detail, the guidelines at this time specify that the detail for a wheel chair and a wheel chair accessible cell will replace the need to order a single person cell. The wheel-chair accessible cell is a current special accommodation."

  Defendant Davis improperly stated that Plaintiff Berryman had not had a single person cell while at St. Louis, but Plaintiff Berryman corrected him. Plaintiff Berryman also explained that he was required to self-evacuate his own feces several times a day, so that no one would want to be in a cell with him. Defendant Davis stated that Plaintiff Berryman's protests were unimportant and that Plaintiff Berryman would not be given a single person cell while at LRF. Plaintiff Berryman told Defendant Davis that he planned on filing a federal lawsuit.

  Plaintiff Berryman filed several kites regarding the matter. At one point, Defendant Jackson sent Plaintiff Berryman a message instructing him to stop kiting because he would not be getting a single person cell at LRF. Defendant Lang took Plaintiff Berryman's documents regarding his medical condition and needs and told Plaintiff Berryman that he would return them and that he would see that Plaintiff Berryman got a single person cell. Some hours later, Defendant Lang returned Plaintiff Berryman's papers, stating that Plaintiff Berryman would have to "start some shit" and sue someone in order to get a single person cell.

  Plaintiff Berryman then asked Defendant Patricio if he could be placed in a single person cell. Defendant Patricio told Plaintiff Berryman that he would look into it later. Plaintiff Berryman became upset, stating that his cell mate had already said he was not going to put up with Plaintiff Berryman self-evacuating his feces several times a day. Defendant Patricio then told Plaintiff Berryman that he needed to talk to medical.

3

Plaintiff Cummings is a seventy-four-year-old prisoner confined to a wheelchair who was transferred to LRF in April of 2018. Plaintiff Cummings wrote to Defendants Washington and McKee on September 30, 2018, seeking assistance with placement in a single person cell, to no avail. Plaintiff Cummings then spoke to Defendant Lang, who stated that he and Plaintiff Berryman needed to stop trying to get placed in single person cells. Plaintiff Cummings spoke to Defendant Lang again on the following day, explaining that placement in a shared cell put him in danger, but Defendant Lang again refused to help him. Plaintiff Cummings also spoke to Defendant Patricio, who said that there was nothing he could do to help Plaintiff Cummings.

Plaintiff Caver states that he is a prisoner confined to a wheelchair who was transferred to LRF in November of 2017. On September 30, 2018, Plaintiff Caver and the other Plaintiffs in this case sent letters to Defendants Washington and McKee, to no avail. Defendant Jackson refused to respond to Plaintiff Caver's kites. Defendant Davis repeatedly told Plaintiff Caver that prisoners who are wheelchair bound would be automatically placed in a barrier-free wheelchair accessible cell. Defendant Davis further stated that this special accommodation meant that health care no longer needed to order single person cells. Defendants Lang and Patricio each refused to help Plaintiff, despite the fact that he personally explained his situation to each of them.

Plaintiff Crowe alleges that he is a sixty-seven-year-old prisoner confined to a wheelchair who was housed in a single person cell prior to being transferred to LRF in 2018. Plaintiff Crowe wrote to Defendants Washington and McKee on September 30, 2018, seeking to be placed in a single person cell, to no avail. Plaintiff Crowe spoke to Defendant Davis in the housing unit, and Defendant Davis stated that prisoners who are wheelchair bound would be automatically placed in a barrier-free wheelchair accessible cell, and that health care would no longer be ordering single person cells. Defendant Davis refused to consider Plaintiff Crowe's

medical condition. Plaintiff Crowe stated that Defendant Jackson refused to respond to any kites. Defendants Lang and Patricio each spoke with Plaintiff Crowe and refused to provide him with a single person cell despite his medical condition and the threats that he had received because of his need to self-evacuate feces on a daily basis.

Plaintiffs claim that Defendants violated their rights under the First, Eighth, and Fourteenth Amendments, and that they engaged in a conspiracy to violate those rights. Plaintiffs seek compensatory and punitive damages.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P.

8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiffs fail to make specific factual allegations against Defendants Washington and McKee, other than their claims that Washington and McKee failed to respond to letters of complaint or to conduct an investigation. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiffs have failed to allege that Defendants Washington and McKee engaged in any active unconstitutional behavior. Accordingly, they fail to state a claim against them.

Plaintiffs claim that their transfer to LRF was retaliatory and that Defendants conspired to destroy or to prevent Plaintiffs from obtaining evidence of the retaliatory transfer. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive). Plaintiffs merely allege the ultimate fact of retaliation in this action. They have not presented any facts to support their conclusion that their transfer to LRF was retaliatiory, or that Defendants retaliated against them once they arrived at LRF. Accordingly, their speculative assertions fail to state a claim.

Plaintiffs claim that Defendants violated their procedural due process rights under the Fourteenth Amendment. The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a

deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

In this case, Plaintiffs state that Defendants violated their due process rights when they "conspired to destroy or deny all of the Plaintiffs other evidence as to the retaliatory transfer." However, Plaintiffs fail to allege any specific facts in support of this claim. Moreover, Plaintiffs' due process claims regarding the alleged destruction of evidence are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiffs' claims are premised upon allegedly unauthorized acts of a state official, they must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

9

Plaintiffs have not sustained their burden in this case. As noted above, Plaintiffs assertions regarding the alleged destruction of evidence showing that there was a retaliatory motive for their transfer to LRF are entirely conclusory. The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiffs do not allege any reason why a state-court action would not afford them complete relief for the deprivation, either negligent or intentional, of "evidence." Furthermore, Plaintiffs do not have a liberty interest in remaining at a particular prison facility or avoiding transfer to a new facility. *Montanye v. Haymes*, 427 U.S. 236, 243 (1976). Because Plaintiffs' due process claims are entirely lacking in merit, they are properly dismissed.

With regard to Plaintiffs' conspiracy claims, the Court notes that a civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). Plaintiffs must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive Plaintiffs of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to Plaintiffs. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, Plaintiffs must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiffs' allegations of conspiracy are conclusory and speculative. Their allegations, even viewed in the light most favorable to Plaintiffs, describe a number of discrete facts that occurred over a period of time involving numerous individual officers. Plaintiffs have provided no allegations establishing a link between the alleged conspirators or any agreement between them. The Supreme Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680.

Moreover, Plaintiffs' conspiracy claims are barred by the intracorporate conspiracy doctrine. This doctrine, which states that if "all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy," has been applied to 42 U.S.C. § 1985(3) by the Sixth Circuit. *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839-40 (6th Cir. 1994) (quoting *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991)). In *Jackson v. City of Cleveland*, 925 F.3d 793, 817-19 (6th Cir. 2019), the Sixth Circuit concluded that the intracorporate conspiracy doctrine also applies to § 1983. As a result, unless members of the same collective entity (such as the MDOC) are acting outside the scope of their employment, they are deemed to be one collective entity and not capable of conspiring. *Jackson*, 925 F.3d at 819; *see also Novak v. City of Parma*, ___ F.3d ___, No. 18-3373, slip op. at 19 (6th Cir. July 29, 2019).

Plaintiffs also assert a violation of their substantive due process rights under the Fourteenth Amendment, which prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. "Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with

11

rights implicit in the concept of ordered liberty." *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002). "Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))). The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

"Where a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, there are specific constitutional amendments that apply to Plaintiffs' claims. For example, the Eighth Amendment provides an explicit source of constitutional protection to Plaintiffs concerning their medical and protection needs for single person cell assignments. *See Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (because the Eighth Amendment supplies the explicit textual source of constitutional protection for claims governing a prisoner's health and safety, the plaintiff's substantive due process claim was subject to dismissal). Similarly, the First Amendment provides an explicit textual source of constitutional protection for Plaintiffs' retaliation claims. Thus, the standard applicable to that source, the First Amendment right to be free from retaliation, and not the more generalized notion of substantive due process should be applied. *Graham*, 490 U.S. at 395; *see also Bell v. Johnson*, 308 F.3d 594, 610 (6th Cir. 2002) (holding that, after *Graham*, the First Amendment standard is the sole source of substantive protection); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (A "substantive due process right to free speech is duplicative of [a] First Amendment retaliation claim."). Likewise, the Fourteenth Amendment Procedural Due Process Clause would apply to protect Plaintiffs' liberty interest in the transfer to LRF and to the alleged destruction of evidence showing retaliation. Consequently, Plaintiffs' substantive due process claims will be dismissed.

Finally, the Court notes that Plaintiffs claim that Defendants Davis, Lang, Patricio, and Jackson violated their rights under the Eighth Amendment when they denied their requests for single person cells. In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate

indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).  The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346.  Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

Plaintiffs assert that because they are in wheelchairs and must manually evacuate their bowels, sharing a cell with another individual would necessarily violate the Eighth Amendment.  However, Plaintiffs fail to allege any specific facts showing that they have been required to evacuate their bowels while their cellmates were actually present, or that the conditions in the cell otherwise constitute a risk to their health or safety.  Nor does the mere fact that Plaintiffs are being required to share a cell with another prisoner support a finding that they are being subjected to the unnecessary and wanton infliction of pain.  Therefore, Plaintiffs' Eighth Amendment claims are properly dismissed.

## Motion for Temporary Restraining Order

Plaintiffs have filed a motion for a temporary restraining order, which seeks immediate placement in single person cells for each Plaintiff, as well as an order preventing Defendants from subjecting Plaintiffs to retaliatory transfers to other prisons.  For the reasons set forth above, Plaintiffs' complaint fails to state a claim.  Accordingly, Plaintiffs' motion for a temporary restraining order (ECF No. 12) will be denied.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Washington, McKee, Davis, Lang, Patricio, and Jackson will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiffs appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiffs are barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If Plaintiffs are barred, Plaintiffs will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: August 28, 2019                             /s/ Gordon J. Quist
                                                  GORDON J. QUIST
                                         UNITED STATES DISTRICT JUDGE